CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
June 13, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| **ELIZABETH WEAKLEY, on behalf of herself and others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**L3HARRIS TECHNOLOGIES, INC.,**<br><br>and<br><br>**AEROJET ROCKETDYNE, INC.,**<br><br>Defendants. | Civil Action No. 3:24cv00047 |

## COMPLAINT

Plaintiff Elizabeth Weakley ("Weakley" or "Plaintiff"), respectfully moves for judgment against L3Harris Technologies, Inc. and Aerojet Rocketydyne, Inc. ("Defendants"), on behalf of herself and all others similarly situated:

### Introduction

1. This is a claim for unpaid overtime and/or minimum wage based on Defendants' pay practices including, but not limited to, its failure to pay wages for 30-minutes each day for purported meal breaks while Plaintiff continued to work during such time. Defendants are in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., (hereinafter "the Act" or "FLSA").  Plaintiff seeks unpaid overtime, liquidated damages, and attorneys' fees and costs arising out of the Defendants' FLSA violations for herself and others similarly situated.

1

## Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) and (c) in that the Plaintiff may bring this action in any appropriate United States District Court.

3. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and W.D.Va. Local Rule 2(a)(2) since the acts and omissions giving rise to this lawsuit have taken place in Orange County, Virginia in the Western District of Virginia, Charlottesville Division.

4. Defendants are subject to personal jurisdiction in the Commonwealth of Virginia.

## Parties

5. Plaintiff is a resident of Virginia who was employed by Defendants as a Senior Executive Administrative Assistant. Plaintiff is an "employee" as defined in the FLSA.

6. Defendant Aerojet Rocketdyne, Inc. ("Aerojet") is an Ohio corporation with its principal office in Cordova, California, and has offices and worksites throughout the United States. Aerojet meets the definition of "employer" as defined in the FLSA.

7. Defendant L3Harris Technologies, Inc. ("L3Harris") is the parent company of Aerojet which is based in Melbourne, Florida with offices in Virginia. L3Harris meets the definition of "employer" as defined in the FLSA.

## General Factual Allegations

8. In 2022 L3Harris announced that it was acquiring Aerojet.

9. In 2023 L3Harris completed its acquisition of Aerojet.

10. According to Aerojet's website, the company is engaged in the business of providing propulsion and energetics to the space, missile defense and strategic systems, tactical systems and armaments areas, in support of domestic and international markets.

11. Weakley was hired by Aerojet in or about June 2003 and was employed as a

Senior Executive Administrative Assistant to support the Engineering Department.

12. Defendants terminated Weakley on or about April 11, 2024 as part of the post-acquisition reduction in force.

13. Weakley received a severance from Defendants and signed a general release in Defendants' favor, except that such severance release did not waive claims that are non-releasable by law.

14. FLSA claims may only be released with approval of either a court or the U.S. Department of Labor.

15. The severance agreement written by Defendants specifically states that "This Agreement does not waive claims which, by law, cannot be waived. This includes…claims under the Fair Labor Standards Act (FLSA)."

16. The severance release provided by Defendants was not approved or reviewed by a court or the DOL.

17. Plaintiff's severance release does not waive or release the claims asserted in this lawsuit.

18. At all times, Weakley worked for Defendants at Aerojet's Orange County, Virginia location.

19. At all times relevant, Plaintiff regularly worked over 40 hours per week from her office, and often worked additional hours from home or other off-site locations or running errands for Defendants away from her worksite.

**Defendants' 9/80 Schedule**

20. Defendants' operated its Orange County location on a so-called 9/80 schedule, meaning its employees were scheduled to work 9 workdays for 80 hours every two weeks, with

every other Friday off.

21. Defendants' schedule for its Orange County plant was for employees to work each Monday through Thursday from 7:30am to 5:00pm (less a 30-minute unpaid lunch break), and then every other Friday employees were either scheduled to work from 7:30am to 4:00pm (less a 30-minute unpaid lunch break), or the plant was closed and employees were scheduled to be off.

22. With such a schedule, employees worked 9 days, for 80 hours (hence the term "9/80 schedule"), during each two-week pay cycle.

23. Plaintiff no longer has access to Defendants pay plan or policies, but on information and belief Defendant's workweek for FLSA purposes started or ended at 11:30 a.m. every Friday.

24. Under Defendant's 9/80 schedule, Defendants would not have to pay overtime in any workweek as long as its employees worked no more than 7:30-5:00 p.m. (Mon-Thurs) and 7:30-4:00 p.m. (every other Friday), and as long as Defendants provided a complete and uninterrupted meal break for 30-minutes each workday. This is because on the Friday workday (as opposed to the Friday day off) the first four hours worked (between 7:30-11:30 a.m.) are part of the first FLSA workweek, while the second four hours worked (between 11:30 a.m. - 4:00 p.m., less a 30-minute meal break) are part of the second FLSA workweek within Defendants' two-week pay period.

25. In other words, under the standard schedule, an employee reached exactly 40 hours worked by 11:30 a.m. on Friday during the first FLSA work week (9 hours per day for Monday – Thursday, or 36 hours, plus 4 hours from 7:30 - 11:30 a.m., for 40 hours); and would work exactly 40 hours during the second FLSA work week beginning at 11:30 a.m. that same

4

Friday (4 hours from 11:30 a.m. to 4:00 p.m. (less 30 minute lunch) on Friday, plus 9 hours per day the following Monday – Thursday, for 40 hours).

26. When Weakley was hired in 2003, she was assigned, and regularly worked the standard schedule beginning her workdays at 7:30 a.m. and working to either 5:00 (every Monday through Thursday) or 4:00 (every other Friday).

27. In or about 2012, Weakley gained responsibility of raising her young grandson and she requested Defendants to allow her to move her daily start and end times one-hour earlier, to 6:30 a.m. and 4:00 p.m. (or 3:00 p.m. every other Friday).

28. Weakley's request was granted, and with the knowledge and approval of her directors, from 2012 until her termination in April of 2024, Defendants scheduled Weakley to work from 6:30 a.m. to 4:00 p.m. Mondays through Thursdays, and 6:30 a.m. to 3:00 p.m. every other Friday.

29. Although her actual schedule changed and was approved, Defendants instructed Plaintiff to, and she did, enter her time according to the standard schedule (7:30 a.m. - 5:00, or 4:00 p.m. every other Friday) used at the Orange plant, as opposed to her actual arrival/departure times which were one hour earlier each day.

30. Upon information and belief, the reason why Defendants instructed Weakley to continue entering the standard Orange schedule as opposed to her actual work hours, was so Defendants could avoid paying Weakley for overtime she earned every other Friday between 10:30 a.m. (when Weakley reached the FLSA 40-hour threshold given her early start time) and 11:30 a.m. (when Defendants' FLSA work week ended).

31. For each week worked within the past three years, Weakley's directors approved her timecards knowing that she began and ended her workday one hour earlier than was reflected

on her time entries.

32.     Based on Weakley's earlier work schedule, Defendants knowingly or willfully deprived her of at least one hour of overtime every other week.

### Administrative Assistants Worked Through Lunches

33.     Although Defendants scheduled Weakley to work 9.5-hour days Mondays through Thursdays, and every other Friday for 8.5 hours, Defendants did not pay Weakley for 30 minutes each day due to a purported lunch break.

34.     Defendants' Orange County facility was a secure location, and it was not easy or convenient for administrative assistants to leave work to get lunch in town and to come back through security and return to work within a 30-minute period.

35.     Weakley regularly brought her lunch to work and ate at her desk and continued to work during the daily 30-minute period that Defendants were not paying her for a purported meal break.

36.     Defendants did not accurately record or keep accurate records of the actual time that Weakley spent working for Defendants during purported meal breaks.

37.     Weakley entered her time each day in Defendants' timekeeping software system called Concur.

38.     Plaintiff was instructed to, and did enter, into Concur a daily 30-minute lunch break for which she was not paid.

39.     Weakley entered her time into Defendants' timekeeping system reflecting a 30-minute lunch break every day from 12:00 – 12:30 p.m., as was instructed by Defendants.

40.     Upon information and belief, it was Defendants' policy that all its employees at the Orange County plant were to enter a 30-minute lunch break into the Concur system,

6

regardless of whether the employee worked during such time.

41. Defendants knew or should have known, and had actual or constructive knowledge, that the administrative assistants at its Orange location were regularly working through their purported meal breaks.

42. Defendants did not train Plaintiff, nor did it require Plaintiff, to stop completely stop working for an uninterrupted meal break.

43. Plaintiff's supervisors did not instruct Plaintiff to stop working for 30 minutes for an uninterrupted meal break.

44. Weakley regularly performed work during her purported meal breaks, including responding to emails, calls, and directions from the individuals she supported.

45. Weakley's desk was right outside of the director's office and in plain sight for supervisors and management (as well as security cameras if any) to see that Weakley continued working during unpaid meal breaks.

46. Weakley ate lunch at her desk while continuing to work.

47. Weakley was not hiding from Defendants the fact that she was working during her lunch "breaks".

48. Weakley continued answering phones, emails, and conducting work for the benefit of her department during the course of her lunch "breaks".

49. Weakley does not smoke and did not take any smoking breaks.

50. Plaintiff's duties were secretarial and clerical in nature supporting the engineering department. Plaintiff's duties included: secretarial support to executives and other employees of the department; making, receiving, and screening phone calls; scheduling; making travel arrangements; setting up meetings; taking breakfast/lunch orders and picking up and delivering

breakfast/lunches for meetings; copying, scanning, sorting, and assembling documents; filing; data entry; and other tasks assigned by Plaintiff's supervisors or other employees of the department.

51. Pursuant to the FLSA, Defendants are obligated to pay Plaintiff at a time and a half rate for all overtime hours worked. Defendants failed to do so.

52. Defendants did not require administrative assistants to accurately track their hours.

53. Defendants did not provide timeclocks for administrative assistants to punch-in-out each day upon their arrival or exit.

54. Defendants did not train Plaintiff on her rights under the FLSA.

55. Defendants did not train Plaintiff on the meaning of a *bona fide* meal break under the FLSA.

56. Defendants did not instruct Plaintiff to refrain from working for an uninterrupted 30-minute block of time in order to receive an unpaid meal break.

57. Upon information and belief, Defendants did not train its managers, supervisors, or directors on the meaning of a *bona fide* meal break under the FLSA.

58. Upon information and belief, Defendants did not instruct its managers, supervisors, or directors on ensuring that their administrative assistants cease all work for a 30-minute, uninterrupted period of time in order to lawfully withhold their wages for a meal break.

59. Upon information and belief, Defendants currently suffer or permit administrative assistants to work overtime hours without compensation in connection with purported meal breaks.

60. Defendants and its executives and managers in the Orange, Virginia location

knew or had constructive knowledge of the fact that Plaintiff was regularly working through her unpaid meal break, and Defendants approved Plaintiff's timesheets despite knowing that she worked through lunch breaks for 2 to 2.5 hours extra each week without compensation.

61. Defendants and its executives and managers in the Orange, Virginia location knew or had constructive knowledge of the fact that Plaintiff was regularly working more than 40 hours per week.

62. Based on the nature of Plaintiff's job duties, there is no FLSA exemption that applies to preclude her from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

63. Defendants treated Plaintiff as eligible for overtime and know that she was entitled to overtime premiums guaranteed by the FLSA.

64. Defendants failed to maintain accurate time records of all hours worked by Plaintiff.

65. Defendants willfully violated the FLSA by knowingly failing to pay its secretarial and clerical employees overtime. Defendants had knowledge or constructive knowledge that Plaintiff worked in excess of 40 hours per week, but failed to pay her overtime compensation.

66. At all relevant times Defendants intended to deprive Plaintiff of the overtime pay she was entitled to under the FLSA, or acted with reckless disregard for Plaintiff's rights under the FLSA.

### Representative Action Allegations for FLSA Collective Action

67. Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as Representative Plaintiff. Plaintiff consents to become party plaintiff in this representative FLSA action pursuant to 29 U.S.C. § 216(b), as evidenced by Plaintiff's written

consent filed herewith. **Exhibit 1**.

68. Defendants employ, and have employed, multiple persons in the same job functions and/or positions as Plaintiff occupied.

69. These employees perform, and have performed, functions which entitle them to payment of overtime compensation wages that they have not received.

70. Defendants compensated, and/or continues to compensate Plaintiff and those similarly situated on a uniform compensation basis common to Plaintiff and other persons performing similar job functions.

71. On information and belief, Defendants paid, administrative, and supervisory operations are centrally managed as a single enterprise, and all or most of Defendants employees performing functions similar to Plaintiff are subject to common, uniform job duties, timekeeping, and payroll practices.

72. Defendants have additionally established uniform payroll policies with respect to the payment of overtime compensation which applied to Plaintiff based on her job duties as an administrative assistant.

73. The FLSA "collective" of similarly situated employees is composed of all present and former employees of Defendants who performed the same or similar job functions as Plaintiff and are or were subject to the same pay practices and were employed within three (3) years of the date of filing of this action.

74. Plaintiff asserts that Defendants' willful disregard of the overtime laws described herein entitles Plaintiff and similarly situated employees to the application of the three (3) year limitations period.

75. Plaintiff's title and job duties, and the titles and job duties or those similarly

situated to Plaintiffs, are not exempt from the coverage of the FLSA.

76.     At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

77.     It was Defendants regular practice to <u>not</u> track the actual hours worked by Plaintiff and others similarly situated, resulting in Defendants' standard policy of failing to pay overtime and/or minimum wages, though they should have tracked such hours and paid overtime or minimum wages in accordance with the FLSA.

78.     Plaintiff and others similarly situated are entitled to overtime pay in an amount of one and one-half times their regular rate of pay for all overtime worked during their employment and minimum wages for all unpaid hours worked during weeks where total hours worked did not exceed 40 hours.

## Count 1 – FLSA Violations

79.     Defendants suffered or permitted Weakley to work at least 2.5 to 3 hours of overtime per week without compensation, for which most weeks Weakley worked more than 40 hours such that the unpaid hours are owed at her overtime premium rate of pay; but for any week in which such her total hours worked did not exceed 40 hours, she is owed the legal minimum wage rate in Virginia for such unpaid hours.

80.     Defendants willfully violated the FLSA and failed to act in good faith in causing the FLSA violations complained of herein.

## FLSA Relief Requested

Wherefore, Plaintiff requests the following Relief against Defendants:

      A.      money damages for all unpaid overtime premiums or minimum wages;

      B.      liquidated damages in an amount equal to all unpaid overtime or minimum

wages owed to Plaintiff;

C. pre-judgment and post-judgment interest;

D. an order conditionally certifying a group of putative collective action members and approving a notice to be sent to all such eligible members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

E. reasonable attorneys' fees and costs expended in the prosecution of this case;

F. any and all further relief permissible by law.

Plaintiff respectfully demands **TRIAL BY JURY**.

> Respectfully submitted,
> **ELIZABETH WEAKLEY**
> Plaintiff
>
> By: _/s/ Craig Juraj Curwood_
> Craig Juraj Curwood (VSB No. 43975)
> Zev H. Antell (VSB No. 74634)
> Samantha R. Galina (VSB No. 96981)
> Butler Curwood, P.C.
> 140 Virginia Street, Suite 302
> Richmond, VA 23219
> Telephone: (804) 648-4848
> Email: craig@butlercurwood.com
>    zev@butlercurwood.com
>    samantha@butlercurwood.com
> *Attorneys for Plaintiff*