UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH WEAKLEY,<br><br>                          Plaintiff,<br><br>v.<br><br>L3HARRIS TECHNOLOGIES, INC., *et al.*,<br><br>                          Defendants. | Civil Action No. 3:24-cv-00047 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR SETTLEMENT APPROVAL**

Subject to court approval, Plaintiff, Elizabeth Weakley ("Plaintiff") and Defendants L3Harris Technologies, Inc. ("L3Harris") and Aerojet Rocketdyne, Inc. ("Aerojet") (collectively "Defendants"), (collectively the "Parties"), have settled this wage and hour action for $55,000.00. The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") settlement because it is a fair and reasonable resolution of a bona fide dispute and is the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law.

For the reasons set forth below, the parties respectfully request that the Court enter an order approving the settlement detailed in the Settlement Agreement (the "Settlement Agreement"). For the Court's convenience, the Settlement Agreement is attached as Exhibit 1.

**PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS**

   **I.**   **Factual Allegations**

Plaintiff alleges that she was employed by Defendants as a Senior Executive Administrative Assistant to support the Engineering Department. Aerojet was acquired by

1

L3Harris in 2023. L3Harris is engaged in the business of aerospace and defense, delivering end-to-end technology solutions connecting the space, air, land, sea and cyber domains in the interest of global security. Defendants operated its Orange County location on a 9/80 schedule, meaning certain of its employees were scheduled to work nine workdays for 80 hours every two weeks, with every other Friday off. Under Defendant's 9/80 schedule, Defendants would not have to pay overtime to non-exempt employees in any workweek as long as such employees worked no more than nine hours (Mon-Thurs) and eight hours. (every other Friday), and as long as Defendants provided a complete and uninterrupted meal break for 30-minutes each workday. This is because on the Friday workday (as opposed to the Friday day off) the first four hours worked are part of the first FLSA workweek, while the second four hours worked (less a 30-minute meal break) are part of the second FLSA workweek within Defendants' two-week pay period. When Plaintiff was hired in 2003, she was assigned, and regularly worked the schedule 7:30 a.m. - 5:00 p.m. (Mon-Thurs) or 4:00 (every other Friday). Around 2012, Plaintiff requested and Defendants allowed her to move her daily start and end times one-hour earlier, to 6:30 a.m. and 4:00 p.m. (or 3:00 p.m. every other Friday). Although her actual schedule changed and was approved, Plaintiff alleges that Defendants instructed Plaintiff to, and she did, enter her time according to her previous schedule (7:30 a.m. - 5:00, or 4:00 p.m. every other Friday), as opposed to her actual arrival/departure times which were one hour earlier each day. Plaintiff alleged the reason why Defendants instructed Plaintiff to continue entering the previous schedule as opposed to her actual work hours, was to avoid paying Weakley for overtime she earned every other Friday between 10:30 a.m. (when Weakley reached the FLSA 40-hour threshold given her early start time) and 11:30 a.m. Defendants asserted their intent was to accommodate Ms. Weakley, and denied any intent to deprive her of overtime or that she was entitled to overtime based on her 9/80 schedule.

Plaintiff also alleged that while she was employed by Defendants, she regularly worked through her 30-minute lunch break and that Defendants failed to pay wages for those 30 minutes each day. Defendants' Orange County facility was in a secure location, and it was not easy or convenient for administrative assistants to leave work to get lunch in town and to come back through security and return to work within a 30-minute period. Plaintiff alleged that she regularly brought her lunch to work and ate at her desk and continued to work during the daily 30-minute period, and that Defendants were not paying her for a purported meal break. Defendants deny these allegations and further denied that Plaintiff was unpaid for time worked. Defendants asserted affirmative defenses including: that Defendants were in compliance with the FLSA, the two-year limitation period on claims bars Plaintiffs' claims in whole or part, Defendants lacked actual or constructive knowledge, the Portal-to-Portal act bars the claims, the *de minimis* defense and several additional defenses. Defendants were also prepared to produce evidence that Plaintiff did not perform work during her reported meal breaks.

Upon Plaintiff's termination she signed a severance agreement and release of claims, and received substantial consideration, releasing her right to sue Defendants for nearly all types of claims, excluding claims under the Fair Labor Standards Act, which Plaintiff has brought in this action.

## II. Overview of Investigation, Litigation, and Settlement Negotiations

The instant lawsuit was filed on June 13, 2024. ECF 1. Prior to filing, Plaintiff's counsel conducted a thorough investigation into the merits of the potential claims and defenses. Plaintiff's counsel focused their investigation and legal research on the underlying merits of the claim and the damages to which the Plaintiff may be entitled. Investigation led Plaintiff's counsel to believe that Defendants impermissibly approved Plaintiff's timesheets despite knowing that she worked

3

through lunch breaks for 2 to 2.5 hours extra each week without compensation. Investigation also led counsel to believe that Defendants knew or had constructive knowledge that Plaintiff and similarly situated clerical staff worked "off-the-clock" when they were supposed to be on lunch breaks. Plaintiff's counsel obtained and reviewed documents from the Plaintiff, including pay stubs, and researched the Defendants' 9/80 workweek schedule.

During discovery, Defendant provided Plaintiff's time entries, badge records and payroll records. Using such data, Plaintiff constructed a damages model and provided the model with an opening demand based on the data to Defendants' counsel. While Defendant did not agree with Plaintiff's model, these calculations at least provided a baseline analysis of maximum exposure and informed settlement positions going forward. Defendants' counsel in response provided its calculations of Plaintiff's damages and a counteroffer. After several rounds of negotiations, the parties agreed on a settlement amount and agreed to the proposed settlement now before the Court.

## SUMMARY OF THE KEY SETTLEMENT TERMS

**The Settlement Amount(s)**

Defendants have agreed to pay a total of $55,000.00 to settle the claims in this action. That amount will be allocated as follows: (i) settlement payment to Plaintiff of $35,000.00, with $17,500.00 allocated to claimed wage loss and $17,500.00 allocated to claimed liquidated damages and (iii) payment to Plaintiffs' counsel's a total of $20,000.00 for attorneys' fees and costs.

**Release**

The parties have agreed to a release, consistent with the rules for FLSA settlements within this district, that are properly tailored to only release the FLSA claims at issue. The prior release provided by Plaintiff in connection with her severance, remains in full force and effect.

4

**Denial of Liability**

The settlement acknowledges that the Defendant denies liability in any way to the Plaintiff and the settlement of this matter should in no way be construed as an admission of liability.

## ARGUMENT

**I.        The Settlement Meets the Requirement for Approval of an FLSA Settlement.**

Settlement of an FLSA lawsuit must be approved by the U.S. Department of Labor or a federal district court. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citing *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005)). Courts in the Western and Eastern District of Virginia have traditionally taken their direction from the Eleventh Circuit and have held that an FLSA settlement should be approved if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (citing *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Furthermore, when the parties' settlement, as here, reflects "a reasonable compromise over the issues the court may approve it in order to promote the policy of encouraging settlement of litigation." *Kuntze v. Josh Enters., Inc.*, No. 2:18cv38, 2019 WL 2179220, at *1 (E.D. Va. May 20, 2019) (internal markings omitted) (citing *Lynn Food Stores*, 679 F.2d at 1354).

This settlement represents a good faith compromise of the parties' bona fide dispute of liability and damages under the FLSA. Furthermore, the proposed settlement terms are fair and reasonable, and the settlement was reached after arms-length negotiation. For these reasons and based on the foregoing, the parties request that the Court approve the Settlement Agreement.

**A.        There is a Bona Fide Dispute over FLSA Provisions.**

To merit Court approval, the settlement must revolve a bona fide dispute over FLSA provisions. *See Patel*, 15 F. Supp. 3d at 654 (citing *Lynn Food Stores*, 679 F.2d at 1355). In this

action, Plaintiff alleges that she was not paid regular and overtime wages in violation of the FLSA. As the Court has noted, "[a] bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1.08cv1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009). Furthermore, Defendants have consistently denied and continue to deny those allegations. The Settlement Agreement contains a provision expressly denying any and all liability to Plaintiffs. As such, this settlement represents a good faith compromise of the parties' bona fide dispute regarding the FLSA claims alleged in the Complaint.

### B. The Settlement is Fair and Reasonable.

"In determining whether a settlement is fair, adequate, and reasonable there is a *strong presumption* in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed." *LaFleur*, 189 F. Supp. 3d at 593 (emphasis added) (internal markings and citations omitted). Those factors to be considered when assessing whether an agreement is fair and reasonable are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of the counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Id.*; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975). As detailed below, all factors point toward approval in this case.

#### 1. The Extent of Discovery that has Taken Place.

Defendants produced relevant time and wage data for the Plaintiff, and "badge swipe" data reflecting Plaintiff's entry and exit from the premises. Plaintiff's counsel was able to use the produced time and pay data to construct a damages model which allowed the Plaintiff to

6

communicate her estimate of Defendants' maximum exposure. As a result, the parties had all the information that they needed to evaluate the damages at issue and to determine whether settlement made legal and/or business sense. Additional discovery certainly could have been sought, e.g., deposition testimony, but it likely would not have changed the damages calculation and would only have caused the parties to incur more fees and expenses. The extent of this informal and formal discovery thus weighs in favor of approval.

## 2. The Stage of the Proceedings.

Because this lawsuit involves allegations of unpaid regular and overtime wages under the FLSA, there are several important issues that would have required significant litigation had the matter not settled. Such issues include proof and defenses with respect to Plaintiff's claimed off the clock work, Defendants' good faith defense(s), and the timeliness of certain owed overtime payments by Defendants after the initiation of litigation. None of this is to mention the time and energy that would have gone into dispositive briefing.

This settlement provides meaningful recoveries to the Plaintiff and avoids any risk of adverse factual findings. From Defendants' perspective settlement eliminates further exposure to fees and prevents the potential for an opt in collective action insofar as settlement was reached prior to Plaintiff's Motion for Class Certification, and Plaintiff's counsel has confirmed that they do not represent any other of Defendants' employees in FLSA claims.

## 3. The Absence of Fraud or Collusion.

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12; *see also Kuntze*, 2019 WL 2179220, at *2. The parties negotiated this settlement at arms-length and settlement was not

7

reached until Defendants had produced all damages data. Thus, there is no evidence to outweigh the presumption that no collusion occurred between counsel.

### 4. The Experience of Plaintiffs' Counsel.

When counsel has "experience in federal court and employment litigation . . . their opinion is entitled to weight." *Gagliastre v. Captain George's Seafood Rest., LP*, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019); *see also Flinn*, 528 F.2d at 1173 ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."). Plaintiff's counsel are experienced in the fields of employment litigation and wage and hour law. They have litigated a number of small and large overtime cases against public entities and private corporations, including, but not limited to:

> *Rogers, et al. v. City of Richmond*, 3:11CV620 (E.D. Va.)
> *Carroll, et al. v. County of Henrico,* 3:12CV00105 (E.D. Va.)
> *Devine, et al. v. City of Hampton*, 4:14CV81 (E.D. Va.)
> *Wright, et al. v. City of Roanoke*, 7:18CV210 (W.D. Va.)
> *Lacroix, et al., v. City of Portsmouth, Virginia*, 2:13CV533 (E.D. Va.)
> *Slavin, et al., v. United States Postal Service*, 3:17CV00134 (E.D. Va.)
> *Milton, et al. v. Quality Eco Technologies, LLC*, 3:20CV43 (E.D. Va.)
> *Yerby, et al. v. City of Richmond*, 3:19CV393 (E.D. Va.)
> *Clinton, et al. v. GEICO*, 2:16CV430 (E.D. Va.)
> *Mendoza, et al. v. Baird Drywall & Acoustic, Inc. et al.*, 7:19-cv-882 (W.D. Va.)
> *Broussard v. Eldor Automotive Powertrain USA* 7:19-cv-0841 (W.D. Va.)
> *Pinon v. Kalyan Plaza, LLC et al.* 7:20-cv-205 (W.D. Va.)
> *Sziber v. Dominion Energy, Inc.* 3:20-cv-117 (E.D. Va.)
> *Jones v. Harvest Roanoke LLC et al.* 7:22-cv-485 (W.D. Va.)
> *Pinon, et al. v. Kalyan Hospitality, LLC, et al.*, 7:20-cv-205 (WDVA)
> *Campbell, et al. v. Intercontinental Capital Group, Inc.*, 3:22-cv-00034 (EDVA)
> *Granderson, et al. v. Capital One Financial Corporation,* 3:21-800 (EDVA)
> *Denson, et al. v Elephant Insurance Services, LLC,* 3:22-cv-00022 (EDVA)
> *Wheaton v. Westminster-Canterbury of The Blue Ridge*, 3:22-cv-00050 (WDVA)

Plaintiff's counsel relied on the time and pay data provided by Defendant to evaluate, negotiate and make well-informed judgments about the adequacy of the settlement. Based on

8

Plaintiff's counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour actions, Plaintiff's counsel's opinion is that the settlement is fair, reasonable, and adequate and resolves a bona fide dispute. That opinion, based on extensive knowledge of employment law, is entitled to significant weight.

### 5. The Probability of Plaintiffs' Success on the Merits.

With regard to the probability of success on the merits, when evidence presented indicates that a plaintiff has "significant hurdles to overcome to affect any recovery under the FLSA," this factor "weighs heavily in favor of finding the settlement fair." *Patel*, 15 F. Supp. 3d at 656. As stated above, recovery in this matter is not guaranteed. Plaintiff faced standard disputes regarding liquidated damages and willfulness and the quantum of any alleged "off-the-clock" work. Because Plaintiff faced significant hurdles with respect to her FLSA claims, the probability of success on the merits factor weighs in favor of approval.

### 6. The Amount of the Settlement in Relation to the Potential Recovery.

Based on the data provided by Defendants, and Plaintiffs estimate of the maximum number of lunch breaks that she could have worked through, Plaintiff estimates that her "best day" would have resulted in $32,343.92 in overtime damages ($64,687.84 inclusive of liquidated damages). Whereas Defendants' "best day" calculation was $0 assuming the fact-finder ruled in its favor on Plaintiff's off-the-clock (meal break) and 9/80 claims.

This settlement compensates the Plaintiff in the amount of $35,000 or approximately 54 % of her alleged "best day" damages inclusive of liquidated damages. The Plaintiff enjoys the benefit of settlement far sooner than if this matter was to go to trial. Additionally, Plaintiff also avoids any of the negative outcomes that she may have faced through litigation, i.e., loss on summary judgment, loss at trial, or loss on appeal. Consequently, this settlement brings considerable value

9

and certainty now, as opposed to months or years from now. The substantial benefit to the Plaintiff is a significant factor weighing in favor of approval of the proposed Settlement Agreement.

### C. Plaintiffs' Attorneys' Fees and Costs.

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). The settlement agreed to by the parties reflects this and rather than engaging in a time consuming and costly fight over the amount of attorneys' fees, the parties here were able to reach a resolution to include attorneys' fees and costs, with Plaintiffs' counsel to receive to a reduction from their lodestar.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)); *see also Davis v. BT Ams. Inc.*, No. 2:16cv206, 2017 WL 11506967, at *2-3 (E.D. Va. May 10, 2017). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *LeFluer*, 189 F. Supp. 3d at 593. However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis. *Devine v. City of Hampton*, No. 4:14cv81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and

use lodestar principals as a cross-check to assess fairness. *Id*. (citing *Poulin*, 2010 1813497, at *1).

Plaintiff and her Attorneys agreed upon 40% contingency fee, after reimbursement of costs advance. As part of the overall settlement of this matter, Plaintiff's counsel voluntarily agrees to forgo the full 40% contractual fee agreement (which would result in fees of $22,000 plus costs reimbursement of $439.00), to take a reduced amount of fees and costs combined of $20,000.00 (which reflects $19,561 in fees and $439 in costs). Such reduction in fee reflects a 35.57% contingency fee. In order for the Court to apply a lodestar cross check, Plaintiff's attorneys have expended, and will continue to expend time in bringing this case to a close, in excess of 40 attorney hours, plus advancing costs of $439, for a lodestar in excess of $23,439.

## CONCLUSION

This Settlement was reached after continued settlement negotiations. The Parties engaged in analysis of the facts and the data at issue and the Settlement Agreement provides the Plaintiffs significant monetary relief. Because the settlement is a fair and reasonable resolution of a bona fide dispute between the Parties, it should be approved.

Respectfully submitted,

By: */s/ Craig Juraj Curwood*
　　　Craig Juraj Curwood (VSB No. 43975)
　　　Zev H. Antell (VSB No. 74634)
　　　Samantha R. Galina (VSB No. 96981)
　　　Butler Curwood, P.C.
　　　140 Virginia Street, Suite 302
　　　Richmond, VA 23219
　　　Telephone: (804) 648-4848
　　　Email: craig@butlercurwood.com
　　　　　　zev@butlercurwood.com
　　　　　　samantha@butlercurwood.com

　　　*Counsel for Plaintiff*

                    */s/ Richard J. Batzler*
                    David L. Greenspan (VSB No. 45420)
                    Richard J. Batzler (VSB No. 95689)
                    McGuire Woods LLP
                    1750 Tysons Blvd., Suite 1800
                    Tysons, Virginia 22102
                    Telephone: (703) 712-5096
                    Facsimile: (703) 712-5214
                    Email: dgreenspan@mcguirewoods.com
                            rbatzler@mcguirewoods.com

                    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 9, 2025 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will provide a Notification of Filing (NEF) to all counsel of record.

                    By:  */s/ Craig Juraj Curwood*
                          Craig Juraj Curwood (VSB No. 43975)
                          Zev H. Antell (VSB No. 74634)
                          Samantha R. Galina (VSB No. 96981)
                          Butler Curwood, P.C.
                          140 Virginia Street, Suite 302
                          Richmond, VA 23219
                          Telephone: (804) 648-4848
                          Email: craig@butlercurwood.com
                                zev@butlercurwood.com
                                samantha@butlercurwood.com

                          *Attorneys for Plaintiff*